UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN T.,<br><br>            Plaintiff,<br><br>       v.<br><br>LELAND DUDEK, Acting Commissioner of Social Security,<br><br>            Defendants. | Case No.  5:24-cv-06533-PCP<br><br>**ORDER AFFIRMING COMMISSIONER'S DECISION**<br><br>Re: Dkt. No. 13 |

Pursuant to 42 U.S.C. § 405(g), plaintiff Bryan T. seeks judicial review of the Commissioner of Social Security's decision denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.[1] Plaintiff asks the Court to reverse the Commissioner's decision and remand for further administrative proceedings. For the following reasons, the Court affirms the decision.

## BACKGROUND

Plaintiff has experienced serious mental health challenges since childhood. On October 1, 2009, he was determined to be disabled beginning October 28, 2008. Almost a decade later, on January 24, 2018, the relevant state Disability Determination Services agency (DDS) determined that plaintiff was no longer disabled. Although he continued to experience major depressive disorder (MDD) with bipolar features, generalized anxiety disorder (GAD), post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), polysubstance abuse in remission, and hepatitis C, those impairments were determined not to be severe enough to prevent plaintiff from engaging in substantial gainful activity. The determination that plaintiff was not

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1  disabled under Title II was upheld upon reconsideration after a hearing by a state disability
2  hearing officer and then upheld again on September 11, 2020 after a hearing before an ALJ.
3        In December 2020 and February 2021, plaintiff filed new applications for benefits under
4  Title II and Title XVI, claiming disabilities for mental health and physical injuries stemming from
5  a head-on car crash in September 2020. Plaintiff's applications were denied by DDS. Plaintiff then
6  requested, and was granted, a hearing before an administrative law judge (ALJ). On September 26,
7  2023, the hearing occurred over telephone. The ALJ received testimony from plaintiff, who
8  appeared unrepresented, and a vocational expert. The ALJ subsequently rendered a decision
9  denying the application on January 23, 2024. That decision became the final order of the
10 Commissioner after plaintiff's request for review by the Appeals Council was denied. The ALJ's
11 decision is therefore the final decision subject to this court's review. See 42 U.S.C. §§ 405(g),
12 1383(c)(3).
13       In her decision, the ALJ applied the five-step sequential analysis used to determine
14 whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920.2.
15       At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity
16 since the alleged onset date, January 1, 2019.
17       At step two, the ALJ found that plaintiff had "the following severe impairments: history of
18 ankle comminuted fracture of the talus, disorders of the skeletal spine, anxiety disorder, depressive
19 disorder, and Attention Deficit Hyperactivity Disorder."
20       At step three, the ALJ found that plaintiff did "not have an impairment or combination of
21 impairments that meets or medically equals the severity of one of the listed impairments in 20
22 CFR Part 404, Subpart P, Appendix 1." With respect to plaintiff's physical ailments, the ALJ paid
23 particular attention to listing 1.18, abnormality of a major joint(s) in any extremity, but found that
24 the specified criteria required of the listing were not demonstrated by the medical evidence
25 because "there is no evidence of subluxation, contracture, or bony or fibrous ankylosis, or imaging
26 documenting joint space narrowing, bony destruction, or ankylosis or arthrodesis of the affected
27 joint, or medical documentation of the need for as assistive device."
28       The ALJ also found that plaintiff's "mental impairments, considered singly and in

United States District Court
Northern District of California

1    combination, do not meet or medically equal the criteria of listings 12.04 [depressive, bipolar and
2    related disorders], 12.06 [anxiety and obsessive-compulsive disorders], 12.11
3    [neurodevelopmental disorders], and 12.15 [trauma- and stressor-related disorders]." To reach that
4    determination, the ALJ considered whether the "paragraph B" criteria of each listed impairment
5    were met. To satisfy the "paragraph B" criteria, a claimant's mental impairments must result in
6    one extreme limitation or two marked limitations in one of four areas of mental functioning: (1)
7    understanding, remembering, or applying information; (2) interacting with others; (3)
8    concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. An extreme
9    limitation is the inability to function independently, appropriately, or effectively, and on a
10   sustained basis. A marked limitation is a seriously limited ability to function independently,
11   appropriately, or effectively, and on a sustained basis. The ALJ determined that plaintiff's mental
12   impairments did not meet the paragraph B criteria because he had a mild limitation in
13   understanding, remembering, or applying information and moderate limitations in all other
14   categories. The ALJ also found that the "paragraph C" criteria of listing sections 12.04, 12.06 and
15   12.15 were not satisfied.
16       "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's
17   [residual functional capacity or] RFC." *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219,
18   1222–23 (9th Cir. 2009). The ALJ found that plaintiff had the residual functional capacity to
19   perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with certain modifications.
20   To reach this determination, the ALJ assessed the evidence before her to consider whether an
21   underlying medically determinable impairment could reasonably be expected to produce the
22   plaintiff's symptoms and then evaluate the extent to which the intensity, persistence, and limiting
23   effects of the plaintiff's symptoms limit his work-related activities.
24       At steps four and five, the ALJ considered plaintiff's age, education, work experience, and
25   residual functional capacity and found plaintiff capable of performing jobs that exist in significant
26   numbers in the national economy, such as power screw driver operator, inspector and hand
27   packager, and marker. The ALJ thus concluded that plaintiff was not disabled from January 1,
28   2019 through the date of her order, January 23, 2024.

3

**STANDARD OF REVIEW**

On review, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court can set aside a denial of benefits only if it is not supported by substantial evidence or based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

**ANALYSIS**

**I.      The ALJ did not improperly rely on citations so vague or inaccurate as to prohibit judicial review.**

Plaintiff argues that the ALJ's decision should be reversed because it relied on overly vague and uncertain references. An ALJ's decision that is unfavorable to a claimant must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1). An adequate explanation of the ALJ's reasoning is required to facilitate judicial review. "A clear statement of the agency's reasoning is necessary because [the Court] can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations and quotations omitted). Plaintiff contends that the ALJ's decision is unsupported by substantial evidence and precludes meaningful review because it "teems with improper bulk citations."

Plaintiff mischaracterizes the ALJ's citations. To be certain, the decision does contain some citations to entire exhibits and, while most of those exhibits are fairly short, some are lengthier. These "bulk citations," however, are generally appropriate. For example, plaintiff takes

4

issue with the ALJ's citation to "Exhibits B3E; B2F; B3F; B4F; B6F; B10F; B11F," which total 124 pages. *See* Tr. 15. But the ALJ provides that citation to support her conclusion that plaintiff's "providers have not noted significant longitudinal deficits in memory." *Id.* To support the finding of an *absence*—the lack of longitudinal deficits in memory identified by providers—it makes sense to include an expansive citation to all those records from which the particular observation is absent. The same is true of the ALJ's citation to "Exhibits B3E; B2F; B3F; B10F; B11F; Hearing Testimony," which supports her finding that plaintiff's "providers have not noted significant longitudinal deficits in concentration or attention in his appointments." Tr. 16. Elsewhere, broad citations are used to support broad conclusions, as in the ALJ's citation to "Exhibits B3E; B1F-B4F; B6F; B10F; B11F; Hearing Testimony," totaling 143 pages, to support the claim that plaintiff conducted himself appropriately at the hearing. Elsewhere in her decision, the ALJ relied on specific pin citations with page numbers to support more specific claims. *See, e.g.*, Tr. 18–20 (citing to specific pages of medical records in assessing plaintiff's medical symptoms).

        Generally, "[e]ven when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012). While more extensive use of pin citations might have been helpful, the ALJ's citations are sufficiently specific to allow this Court to review her reasoning.

        Plaintiff also claims that much of the material that the ALJ cited was unrelated to the matters for which it was cited. For example, he challenges the ALJ's citation to Exhibit B11F to support her mental impairment findings because that exhibit mostly contains dental records. Tr. 15–16. But that exhibit also contains records pertaining to plaintiff's psychiatry telehealth visits. Tr. 1657–59, 1662–64. Although a pin citation would have been more precise, its absence does not lead to an inference that the ALJ relied on the unrelated portions of the exhibit. Rather, the Court can infer from the ALJ's discussion of her reasoning that her citation to Exhibit B11F refers to plaintiff's psychiatry records.

        Plaintiff argues that the psychiatry records in Exhibit B11F do not support the ALJ's conclusion that he has only mild limitations in understanding, remembering, and applying information. While those records showed that plaintiff was experiencing severe depression at the

5

time of the telehealth visits, they did not document difficulties in understanding, remembering, and applying information. Further, the ALJ considered those records alongside several others and her determination reflects a holistic assessment.

**II.    The ALJ did not violate her duty to develop the record and remand is not warranted because the additional medical records that plaintiff argues the ALJ should have acquired were unlikely to have changed the outcome of her determination.**

Plaintiff argues that the ALJ's decision should be reversed because she failed to adequately develop the record. "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is heightened when the claimant is unrepresented or may be mentally ill, both of which were true in plaintiff's case. *Id.* When the ALJ is confronted with ambiguous evidence or finds that the record is inadequate, she has a duty to inquire further. *Id.*

Plaintiff claims that the ALJ failed to develop the record in two ways. First, he argues that the ALJ breached her duty to develop the record by instructing plaintiff to provide the name of the prison where he was incarcerated so that she could obtain his records rather than telling him how to submit those records himself. Second, plaintiff argues that the ALJ "fail[ed] to explore with [plaintiff] the parts of the record that she would hold against him."

As to plaintiff's first argument, the record shows that when plaintiff mentioned that he saw a doctor in prison for his mental impairments, the ALJ inquired about the treatment he received. Tr. 1136. She immediately explained that she would hold the record open for 14 days so that she could get plaintiff's treatment records from the prison. Plaintiff mentioned that he did not remember the name of the prison and the ALJ explained that he could likely find the name on the records he had at home and all he needed to do was call the office and convey that information. Tr. 1136–37. Plaintiff gave no indication that he might be unable to do so, affirming instead, "Okay. Okay." Tr. 1137. Later in the hearing, the ALJ reminded plaintiff to let her know where he was incarcerated and provided a phone number for him to call. Tr. 1146–47. He affirmed that he would call and added, "I will send that record to you sometime today." Tr. 1148.

The Ninth Circuit has specifically held that one of the ways that an "ALJ may discharge

6

1  [the] duty" to "conduct an appropriate inquiry" when faced with an ambiguous or inadequate
2  record is to "keep[] the record open after the hearing to allow supplementation of the record."
3  *Tonapetyan*, 242 F.3d at 1150. That is precisely what the ALJ did here. Plaintiff does not claim
4  that he provided the name of the prison to the ALJ and that she nonetheless failed to obtain his
5  records. He does not offer an explanation for his failure to provide that information. It appears that
6  the ALJ endeavored to develop as complete a record as possible and plaintiff's own inaction was
7  the reason the ALJ was unable to consider his medical records from prison in making her
8  determination.

9  Plaintiff also argues that the proper source from which to obtain his records was the
10  Department of Corrections centralized records department, not the prison itself. The proper
11  procedure for obtaining plaintiff's prison records is not clear from the record before the Court, but
12  regardless, the ALJ fulfilled her duty to develop the record by holding the record open after the
13  hearing so that she could include plaintiff's prison records as soon as he provided the name of the
14  prison.

15  Further, plaintiff has not shown that there is a reasonable possibility that the addition to the
16  record of his medical records from prison would have changed the ALJ's determination.
17  "Under 42 U.S.C. § 405(g), remand is warranted only if there is new evidence that is material and
18  good cause for the late submission of the evidence. New evidence is material if it bears directly
19  and substantially on the matter in dispute, and if there is a reasonable possibility that the new
20  evidence would have changed the outcome of the determination." *Bruton v. Massanari*, 268 F.3d
21  824, 827 (9th Cir. 2001), *as amended* (Nov. 9, 2001) (cleaned up). Here, plaintiff's prison records
22  are generally consistent with the ALJ's findings. The records do attest to plaintiff's mental health
23  challenges, which the ALJ acknowledged, but they do not indicate that the intensity, persistence,
24  or limiting effects of his symptoms were inconsistent with the ALJ's findings. For example, one
25  record of a medical visit states that plaintiff "tries to stay to himself; doesn't feel like socializing;
26  feels irritable; other inmates bother him; still some depressed mood," but then notes that that his
27  mood is "improved overall; reports fair energy and motivation; sleep is fair; attention is fair with
28  use of [medication]." Tr. 39. Another record states that plaintiff "hears voices" but adds that he is

1  "able to ignore them; denies commands; voices don't bother him." Tr. 36. His records describe
2  irritability, depression, and anxiety but also note that plaintiff is "feeling alright," "has a little
3  anxiety being in prison, but it is improved and manageable; appetite is good; sleep is good;" Tr.
4  36, and describe him as "alert, fully oriented, in not acute distress, fair attention, cognitions
5  intact," Tr. 37. It is highly unlikely that these records would have changed the ALJ's nondisability
6  determination.

7        Plaintiff contends that the ALJ also breached her duty to develop the record by failing to
8  adequately inquire about certain activities, such as plaintiff's enrollment in an online class, that
9  she relied on in discrediting plaintiff's testimony about the severity of his symptoms. But
10 plaintiff's statements about those activities were "neither [so] ambiguous nor inadequate" as to
11 trigger her duty to inquire further. *Mayes v. Massanari*, 276 F.3d 453, 460; *see id.* at 459–60 ("An
12 ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or
13 when the record is inadequate to allow for proper evaluation of the evidence."). No further inquiry
14 was necessary for the ALJ to determine that plaintiff's enrollment in an online class was less than
15 an unambiguous success because, as plaintiff himself notes, the record before the ALJ contained
16 evidence about the challenges he faced in that class. Plaintiff questions how taking a class in
17 which he struggled could support the ALJ's determination that his symptoms were less severe than
18 he claimed, but the ALJ's determination did not rely on plaintiff's middling performance in a
19 single online class alone but rather derived from consideration of the entire record before her,
20 including evidence of plaintiff's other daily activities, the objective medical evidence, and
21 plaintiff's noncompliance with treatment. *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir.
22 2005).

23 **III.     The ALJ's misapplication of *Chavez* was harmless error.**
24       Plaintiff argues that the ALJ misapplied the *Chavez* presumption of nondisability. *See*
25 *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). In *Chavez*, the Ninth Circuit held that "[t]he
26 principles of res judicata apply to administrative decisions, although the doctrine is applied less
27 rigidly to administrative proceedings than to judicial proceedings." *Id.* at 693. A prior final
28 determination of nondisability "creates a presumption that [the claimant] continued to be able to

8

1  work after that date." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (cleaned up), *superseded
2  on other grounds*. Plaintiff points to two errors in the ALJ's application of *Chavez*. First, he argues
3  that the ALJ erred because the nondisability presumption applies only if the subsequent
4  application is under the same title as the previously decided claim, and plaintiff's previous
5  nondisabled determination was issued under Title II while his later claims were pursued under
6  Titles II and XVI. Second, he argues that the ALJ misapplied the two-step *Chavez* analysis. At the
7  first step, the claimant must show changed circumstances indicating a greater, new, or changed
8  disability in order to overcome the presumption of disability. *Chavez*, 844 F.2d at 693. If the
9  presumption is rebutted, the second step is to determine whether there is new and material
10 evidence that justifies reconsidering the earlier determination. *See Tuttle v. Kijakazi*, No. 1:20-CV-
11 00929-GSA, 2021 WL 3723215, at *3 (E.D. Cal. Aug. 23, 2021). Here, the ALJ apparently
12 combined the two steps, holding that "there is no new and material evidence relating to the
13 findings from the prior decision … and the claimant has not overcome the presumption of
14 nondisability." Tr. 12.

15       Plaintiff is correct that the ALJ erred in her application of *Chavez*. But reversal is not
16 justified because that error was harmless. *See Burch*, 400 F.3d at 679 ("A decision of the ALJ will
17 not be reversed for errors that are harmless."). The ALJ conducted the complete five-step
18 sequential evaluation set out in 20 C.F.R. §§ 404.1520 and 416.920.2. She considered all of the
19 medical evidence before her, including evidence that plaintiff argues supports departing from the
20 prior determination. She made a full assessment of plaintiff's RFC, based on careful consideration
21 of the entire record. The ALJ's error was harmless because "it is clear from the record ... that it
22 was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d
23 1035, 1038 (9th Cir. 2008) (cleaned up); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d
24 1190, 1197 (9th Cir. 2004) (holding error is harmless where it "does not negate the validity of the
25 ALJ's ultimate conclusion"); *Cha Yang v. Comm'r of Soc. Sec. Admin.*, 488 F. App'x. 203, 204
26 (9th Cir. 2012) (holding that although the ALJ misapplied *Chavez* by failing to cite the plaintiff's
27 changed circumstances, the error was harmless because the ALJ weighed the medical evidence in
28 formulating the claimant's RFC); *Alex E. P. v. O'Malley*, No. 2:23-CV-09147-DTB, 2024 WL

4720876, at *5 (C.D. Cal. Sept. 30, 2024) ("Even if the ALJ erred in finding no changed circumstances rebutting the presumption of continuing nondisability, the ALJ's error was harmless …. [T]he ALJ proceeded with the sequential decision-making process, evaluated the medical evidence, and made a full assessment of Plaintiff's RFC."); *Koshak v. Berryhill*, No. 2:17-cv-06717-AFM, 2018 WL 4519936, at *3 (C.D. Cal. Sept. 19, 2018) ("[B]ecause the ALJ proceeded to evaluate all of the medical evidence and make new findings, the finding that Plaintiff did not rebut the presumption of non-disability was harmless error."); *Payne v. Colvin*, Case No. 1:12-cv-1764-SMS, 2014 WL 348455, at *7 (E.D. Cal. Jan. 31, 2014) (finding that any error in the ALJ's misapplication of *Chavez* was harmless because the ALJ made a full assessment of the claimant's RFC).

## IV. The ALJ reasonably evaluated the persuasiveness of the medical opinion evidence.

Plaintiff argues that the ALJ erred in her assessment of the medical evidence. An ALJ "must consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041. Where there are ambiguities or conflicts in the medical evidence, the ALJ is responsible for resolving them. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ "must articulate how persuasive [she] finds all of the medical opinions from each doctor or other source, and explain how [she] considered the supportability and consistency factors in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (cleaned up); *see* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor is "the extent to which a medical source supports the medical opinion by explaining the 'relevant objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)) (cleaned up). The consistency factor is "the extent to which a medical opinion is 'consistent with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)) (cleaned up). An ALJ *may*, but need not, consider other factors, such as "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists." *Woods*, 32 F.4th at 792. Where "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same, [the

10

ALJ] will articulate how [she] considered the other most persuasive factors." 20 C.F.R. § 404.1520c(b)(3).

Plaintiff argues that the ALJ erred by: (1) finding Dr. Watt's opinion unpersuasive, (2) finding the opinions of Dr. Hawkins and Dr. Morris persuasive; and (3) failing to provide sufficient analysis of the persuasiveness of the medical opinion evidence about plaintiff's physical limitations.

Regarding Dr. Watt, the ALJ complied with the relevant regulations by articulating how persuasive she found Dr. Watt's opinion and how she considered the supportability and consistency factors in reaching that finding. She noted, for example, that Dr. Watt's opinion that plaintiff was markedly impaired in several areas was not supported by any "report[ed] observations" and "no explanation was provided for why [plaintiff] would have any marked impairments." Tr. 21. She found that Dr. Watt's opinion about plaintiff's marked impairments was inconsistent with "her findings on mental status exam [that plaintiff] was essentially within normal limits." *Id.* The ALJ also discussed the inconsistencies between Dr. Watt's opinions and those of other medical experts whose opinions she found persuasive, for articulated reasons.

Plaintiff argues that the ALJ's conclusions are not supported by substantial evidence because he disagrees with her assessment of the supportability and consistency of Dr. Watt's opinion. He offers various arguments for why the ALJ should have assessed Dr. Watt's opinion differently. For example, he argues that the ALJ should not have discounted Dr. Watt's conclusions that were based only on his self-reports and contradicted by her own observations because self-reports can be an important part of mental health examinations. But the possibility of reasonably reaching a different conclusion about persuasiveness does not make an ALJ's determination unsupported by substantial evidence and is not sufficient grounds for reversal. Substantial evidence is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," not such relevant evidence as a reasonable mind would find permits no other conclusion. *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). As long as the "ALJ's rationale is clear enough that it has the power to convince," *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022), it is not the "role [of this Court]

11

1   to second-guess it," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

2       As for the opinions of Dr. Hawkins and Dr. Morris, plaintiff argues that: (1) their
3   misunderstanding of the applicability of *Chavez* renders their opinions "legally and factually
4   infirm" such that the ALJ's reliance on their opinions was harmful error, (2) the ALJ's finding that
5   their opinions were "supported by a review of much of the medical evidence" was inaccurate
6   because they did not review plaintiff's treatment records from prison (3) the ALJ's finding that
7   "subsequent medical evidence does not show any mental health treatment or notes regarding
8   mental health" was incorrect, (4) the ALJ's finding that Dr. Hawkins's and Dr. Morris's
9   assessments of plaintiff's mental health were "supported by a reasonable explanation with specific
10  references to the record" was inaccurate, and (5) Dr. Hawkins's opinion is internally inconsistent.

11      None of these arguments is persuasive. First, because Dr. Hawkins and Dr. Morris, like the
12  ALJ, conducted a full review of the medical evidence before them, any misinterpretation of
13  *Chavez* was harmless error. Second, the fact that Dr. Hawkins and Dr. Morris did not review
14  plaintiff's treatment records from prison, which were not part of the record at the time they gave
15  their opinions, does not necessarily mean those records fail to support their opinions. As discussed
16  above, plaintiff's treatment records from prison largely support the ALJ's findings. Third, any
17  mischaracterization of plaintiff's subsequent mental health treatment is harmless error because that
18  treatment was only one of the various reasons the ALJ provided for finding Dr. Hawkins's and Dr.
19  Morris's opinions supported. As to plaintiff's fourth and fifth arguments, they amount to an
20  alternative interpretation of the record, which, as explained above, is an insufficient ground for
21  reversal.

22      Finally, plaintiff challenges the ALJ's assessment of the medical opinion evidence
23  concerning his physical limitations. He argues that the ALJ erred by failing to articulate how
24  persuasive she found the opinions of Dr. Corbier and Dr. Malvi. While she did not explicitly state
25  that she found their opinions persuasive, she explained why she found them supported and
26  consistent, as required by the regulations. Her failure to use the word "persuasive" was harmless
27  error. Plaintiff also contends that the ALJ did not adequately explain why she found the opinions
28  supported and consistent. Her explanation may have been brief, but it was adequate, especially in

1    the context of her thorough discussion of the record elsewhere in her decision.

2        The remainder of plaintiff's challenges to the ALJ's treatment of the medical opinion
3    testimony concerning his physical limitations largely focuses on her purported failures to explain
4    how she resolved conflicts between the various opinions and how she incorporated those opinions
5    in her RFC finding. But the conflicts that plaintiff identifies—both between the medical opinions
6    and between those opinions and the ALJ's RFC determination—are largely illusory and any error
7    was harmless. While the opinions involved slightly different conclusions about certain of
8    plaintiff's physical limitations, they were largely in agreement. None of the limitations that the
9    ALJ found were less severe than the most conservative of the medical opinions—balancing,
10   kneeling, and crouching, which she found plaintiff could perform frequently but Dr. Kirk found he
11   could only perform occasionally—are implicated in the jobs that the ALJ found are available in
12   significant numbers in the national economy and that plaintiff could perform.

13   **V.   The ALJ did not improperly discredit plaintiff's testimony regarding the severity of his symptoms.**
14

15   Plaintiff argues that the ALJ improperly discredited his testimony about the severity of his
16   symptoms. Generally, district courts "leave it to the ALJ to determine credibility, resolve conflicts
17   in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (cleaned
18   up). If an ALJ determines that a claimant "has presented objective medical evidence of an
19   underlying impairment which could reasonably be expected to produce the pain or other
20   symptoms alleged … and there is no evidence of malingering, the ALJ can reject the claimant's
21   testimony about the severity of her symptoms only by offering specific, clear and convincing
22   reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up).
23   An ALJ's "finding that a claimant's testimony is not credible must be sufficiently specific to allow
24   a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible
25   grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Orteza v. Shalala*,
26   50 F.3d 748, 750 (9th Cir. 1995). But as long as the ALJ "show[s] [her] work, … [t]he standard
27   isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it
28   has the power to convince." *Smartt*, 53 F.4th at 499. If the ALJ's interpretation of the evidence is a

"reasonable [one] and is supported by substantial evidence" it is not the "role [of this Court] to second-guess it." *Rollins*, 261 F.3d at 857; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quotation marks and citation omitted) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").

Plaintiff contends that the ALJ's explanation of her reasons for discrediting his symptom testimony was not sufficiently specific. Plaintiff notes that the ALJ must "identify what testimony [was] not credible and what evidence undermine[d] the claimant's complaints." *Ghanim*, 763 F.3d at 1163. But the law "do[es] not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do[es it] require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The ALJ did, in fact, identify which testimony was not credible and which evidence undermined plaintiff's complaints. Plaintiff's testimony that she found "not entirely consistent with the medical evidence and other evidence in the record" involved his "statements concerning the intensity, persistence and limiting effects of [his] symptoms." Tr. 18. She catalogued plaintiff's symptom testimony in some detail:

> The claimant alleges mental health, back pain and right shattered ankle prevents him from working (Exhibit B2E). At the hearing, the claimant testified that he last worked in his mid-20s, noting that he was on disability from 1999 up until 2018 or 2019 due to his mental health. He stated that he cannot work because he cannot be around large crowds of people and panic attacks. He stated that he was recently released from prison in March 2023, noting that he was seeing a doctor while he was incarcerated. He was incarcerated from March 2022 to March 2023 for unauthorized use of a vehicle. He testified that he cannot hold a job because he does not want to get out of bed. He stated that he recently started taking medications and he is not sure if they are helping. He testified that he cannot work due to his right ankle that he shattered 3 years ago during a head on car accident. He stated that he cannot stand for periods of time as the pain is unbearable. He estimated that he could stand two hours before he has to move around. He testified that he suffers from bipolar, obsessive compulsive disorder, severe anxiety and panic attacks. He testified that he lives with his pastor. He stated that he cooks, cleans and shops, if he is not in a depressed mood. He stated that his roommate supports him financially.

Tr. 17. Plaintiff faults the ALJ for failing to include citations to his specific statements in the

14

record. But even without more thorough citations, it is clear that the ALJ is referencing plaintiff's hearing testimony, and the absence of citations does not prevent this court from reviewing her reasoning. Plaintiff also faults the ALJ for paraphrasing testimony, but an ALJ need not quote a plaintiff's testimony verbatim in order for this court to assess her reasons for discrediting it.

The ALJ provided a detailed accounting of the medical evidence that contradicted plaintiff's symptom testimony. Plaintiff argues that the ALJ merely "provid[ed] a summary of medical evidence" which "is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Lambert v Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020). But unlike in *Lambert*, the ALJ here did not merely summarize medical evidence and leave the district court to fill in the blanks and draw its own inferences. Instead, she explained why the medical evidence undermined plaintiff's description of his own symptoms. For example, she explained that "treating records noted that [plaintiff's] treatment was limited to conservative methodologies (such as medication); and there were issues with noncompliance, all suggesting milder symptoms than alleged." *See Ghanim*, 763 F.3d at 1163 ("An ALJ may consider a range of factors in assessing credibility, including … unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.").

The ALJ also noted that plaintiff's "regular activities included classes online, chores, staying indoors, and taking care of his partner," Tr. 20, which were "inconsistent with functional limitations to the degree alleged," Tr. 19. *See Ghanim*, 763 F.3d 1154, 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). While "the mere fact that a plaintiff has carried on certain daily activities" does not *necessarily* detract from his credibility, *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017), "inconsistent daily activities may provide a justification for rejecting symptom testimony," *id.*, when they contradict plaintiff's other testimony or if they "involve[e] the performance of physical functions that are transferable to a work setting," *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The daily activities that the ALJ cited contradict, or are at least in some tension with, plaintiff's testimony about his limitations, such as his assertion that he cannot hold a job because he does not want to get out of bed. And the activities of taking an online class and

15

caring for a partner are both transferable to a work setting. The instant case is thus distinguishable from those that plaintiff cites. *See Orn*, 495 F.3d at 639 (holding that the ALJ improperly rejected the claimant's testimony because the activities of reading, watching television, and coloring in coloring books did not meet the threshold for transferable work skills); *Revels v Berryhill*, 874 F.3d 648, 667–68 (9th Cir. 2017) (cleaned up) (holding that "the ALJ erred in finding that there was wide disparity between [claimant's] symptom testimony and her reports of her daily activities because "he failed to acknowledge that, over and over … [claimant] explained that she could complete only some of the tasks in a single day and regularly needed to take breaks—which was consistent with her symptom testimony"); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (holding that ALJ's statement "in passing and in a different section than the credibility determination" that the claimant's "self-reports were inconsistent in some unspecified way with her testimony at the hearing" was insufficiently specific).

Plaintiff's remaining challenges simply involve an alternative view of the record. He disputes the ALJ's interpretation of the medical evidence, her characterization of his treatment history, and her assessment of his daily activities. But this Court may not reverse an ALJ's determination merely because another possible interpretation of the record is possible. *Rollins*, 261 F.3d at 857; *Ghanim*, 763 F.3d at 1163. For the reasons discussed above, the ALJ's reasoning is clear and specific and supported by substantial evidence.

## VI. Substantial evidence supports the ALJ's RFC finding and step five finding.

Plaintiff argues that the ALJ's RFC and step five findings are not supported by substantial evidence for the reasons discussed above, including her purportedly defective assessment of the medical opinion evidence and disregard of plaintiff's testimony. Because those arguments fail, so too does plaintiff's challenge to the RFC and step five findings.

## CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's decision. The Court directs the clerk to enter judgment in favor of the Commissioner and against plaintiff and to close this action.

**IT IS SO ORDERED.**

Dated: September 8, 2025

P. Casey Pitts
United States District Judge

17